IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERNEST JAMAL NELSON,            )
                                )
            Petitioner           )
                                )
     vs.                         )   Civil Action No. 07-1453
                                )   Judge Terrence F. McVerry/
SUPERINTENDENT OF SCI-           )   Magistrate Judge Amy Reynolds Hay
HUNTINGDON; ATTORNEY GENERAL    )
OF THE COMMONWEALTH OF          )
PENNSYLVANIA; DISTRICT          )
ATTORNEY OF ALLEGHENY           )
COUNTY,                          )
                                )
            Respondents          )

REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully recommended that the habeas petition filed pursuant to 28 U.S.C. § 2254 be denied and that a certificate of appealability be denied.

REPORT

Ernest Jamal Nelson, a gang member, was convicted of, inter alia, voluntary manslaughter and five counts of aggravated assault in connection with the shooting of a member of a rival gang in a bar, where innocent bystanders were also shot by Petitioner. As a consequence, he is serving a sentence of 32 to 70 years for his crimes. Now he seeks federal habeas relief. In his habeas petition, it appears that he raises only one issue, namely, whether his trial counsel was ineffective for failing to call two witnesses (namely, Dirra Smith and Shawn Matthews) to the stand who, allegedly, both would have testified that Petitioner was not the

shooter. Despite the fact that his conviction became final on November 20, 2002, he did not file the instant habeas petition until July 23, 2007. Because his petition is time barred, and because Petitioner failed to carry his burden to show entitlement to the extraordinary relief of equitable tolling, the petition should be denied as time barred. Alternatively, because Petitioner fails to show, as is his burden, that the State Court's determination of the sole claim herein of ineffectiveness was either contrary to or an unreasonable application of United States Supreme Court precedent, the petition should be denied on the merits.

### A. Relevant Factual and Procedural History

Given that we write primarily for the parties who are well acquainted with the facts of the crimes and the testimony at Petitioner's trial, we forego a lengthy recitation herein. A summary of the facts underlying the crime is provided in the Superior Court opinion on direct appeal. Dkt. [20-2] at 26 to 28.

We turn then to a brief recounting of the procedural history. Petitioner, appearing pro se, filed his habeas petition pursuant to 28 U.S.C. § 2254. Dkt. [12]. Therein, he raised the sole issue of whether his trial counsel was ineffective for failing to call at the trial, two supposed eyewitnesses who were present in the bar at the time of the shooting and who, allegedly would have testified that Petitioner was not the shooter. Dkt. [12] at 22. In that habeas petition, he also conceded that his petition was untimely filed under AEDPA but that he should be granted equitable tolling, based on the claim that he never learned of the fact that the Pennsylvania State Supreme Court denied his counseled petition for allowance of appeal ("PAA") until some unspecified time in July 2007. According to the exhibits attached to his habeas petition, Dkt. [12] at 45, after Petitioner wrote to the Pennsylvania Supreme Court making inquiry, the Court's

2

prothonotary sent a letter to Petitioner, dated July 6, 2007 informing Petitioner that his PAA was denied on June 10, 2005. On July 12, 2007, Petitioner executed an affidavit recounting this. Dkt. [12] at 43. On July 23, 2007, less than two weeks after July 6, 2007, the United States District Court for the Middle District received the instant habeas petition, a 38 page document with additional pages of attached materials as exhibits.[1] The habeas petition exhibited extensive research and addressed the untimeliness of the petition in great detail, with in-depth argument, and extensive citations to cases, a remarkable feat for a pro se prisoner to accomplish in such a short period of time, less than two weeks after allegedly first learning that his habeas petition was untimely.

The Respondents filed an answer, Dkt. Nos. [19] and [20], in which they argued that Petitioner is not entitled to equitable tolling and that his petition is meritless. In stark contrast to Petitioner's ability to quickly create and file his habeas petition, including addressing the untimeliness issue after allegedly learning of it only two weeks prior to the filing of the petition, Petitioner requested an additional 60 days in which to file a traverse to the answer. Dkt. [21]. That extension was granted. Dkt. [22]. Petitioner filed his traverse. Dkt. [23].

### B. Applicable Legal Principles

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was enacted on April 24, 1996. Because Petitioner's habeas petition was filed after its effective date, AEDPA is applicable to this case.

---

[1] Because Petitioner's conviction arose out of a county located within the Western District, the Middle District Court transferred the case to this court.

Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Respondents pointed out in their answer that this petition is untimely under AEDPA. As relevant here, AEDPA requires that state prisoners file their federal habeas petition within one year after their conviction becomes final.[2] Specifically, AEDPA provides that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>   . . . .
>
>   (2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

A habeas respondent has the burden of affirmatively pleading AEDPA's statute of limitations. Hill v. Braxton, 277 F.3d 701, 705 (4th Cir. 2002). However, it is appropriate - where the habeas petitioner has been put on notice of a statute of limitations defense - to place some burden on him or her to show why the petition is not untimely. See, e.g., Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002) ("once a petitioner is given adequate notice and opportunity to respond to allegations that his petition is subject to dismissal pursuant to AEDPA's statute of limitations, petitioner has the burden of providing an adequate response"), abrogation on other

---

[2] Although AEDPA provides three other potential starting points for the running of its one year limitations period, Petitioner has not argued for the application of any of those three other starting points and, indeed, from the record, none appear to be applicable.

4

grounds recognized in, Moreno v. Harrison, 245 Fed.Appx. 606 (9th Cir. 2007). See also Jackson v. Secretary for Dept. of Corrections, 292 F.3d 1347, 1349 (11th Cir. 2002); Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002)("The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed.").

In Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir. 2000), the Court of Appeals for the Second Circuit explained the very important values that AEDPA's statute of limitations serves. In Acosta, the Court of Appeals stated that

> The statute of limitation in Section 2244(d) "was Congress' primary vehicle for streamlining the habeas review process and lending finality to state convictions." Walker v. Artuz, 208 F.3d 357, 361 (2d Cir.2000); cf. Schlup v. Delo, 513 U.S. 298, 322 (1995) (stating that on collateral review, courts should "accommodate [ ] ... the systemic interests in finality ... and conservation of judicial resources"). The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time. Like the other procedural bars to habeas review of state court judgments, the statute of limitation implicates the interests of both the federal and state courts, as well as the interests of society[.]

Acosta, 221 F.3d at 123.

### C. Discussion

#### 1. The Petition is time barred

Petitioner's conviction became final 90 days after August 22, 2002, which is the date whereon the Pennsylvania Supreme Court denied the counseled PAA in his direct appeal from his conviction. See United States Supreme Court Rule 13 (providing that a petition for certiorari

must be filed no later than 90 days after entry of an order denying discretionary review by the state court of last resort); Stokes v. District Attorney of Philadelphia, 247 F.3d 539, 542 (3d Cir. 2001)(explaining that AEDPA's phrase "became final by ... expiration of time for seeking [direct] ... review" includes the 90 days time in which to seek certiorari); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999). In counting this 90 day time period, the court follows Fed.R.Civ.P. 6[3] and concludes that Petitioner's conviction became final on November 20, 2002. Hence, AEDPA's one year[4] statute of limitations began to run from November 21, 2002 and continued to run until August 21, 2003, which was the day before Petitioner filed a PCRA petition through, apparently, privately retained counsel. Dkt. [20-3] at 1 to 5.[5] Again utilizing Fed.R.Civ.P. 6, the court calculates that from November 21, 2002 to August 21, 2003, a total of two-hundred and fifty-five (255) days from the 365-day limit ran. Consequently, Petitioner had

---

[3] Fed.R.Civ.P. 6 provides in relevant part that

In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the district court inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

[4] For purposes of AEDPA's one year statute of limitations, a "year" means 365 days. See Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001); Stokes v. Miller, 216 F.Supp.2d 169 (S.D.N.Y. 2000).

[5] Although, pursuant to Fed. R. Civ. P. 6, the last day of a time period is to be counted, August 22, 2003 is not to be counted here because, on that date, Petitioner filed his PCRA petition and thus as of that date AEDPA's statute of limitations is tolled, i.e., did not run due to the fact that Petitioner had a petition for post conviction relief "pending" for at least a portion of August 22, 2003, within the meaning of 28 U.S.C. § 2244(d)(2). See Freeman v. Pew, 59 F.2d 1037, 1037 (D.C. Cir. 1932) ("it has long been the settled doctrine that the law, disregarding fractions, takes the entire day as the unit of time."); In re Susquehanna Chemical Corp., 81 F.Supp. 1, 9 (W.D. Pa. 1948)(general rule is that fractions of a day are to be disregarded), aff'd, 174 F.2d 783 (3d Cir. 1949).

only 110 days remaining of AEDPA's limitations period. That PCRA petition continued to be pending through June 10, 2005, the date whereon the State Supreme Court denied the counseled PAA. Dkt. [20-9] at 34. Hence, AEDPA's statute of limitations began to run again on June 11, 2005, and continued to run until September 29, 2005, when all of AEDPA's remaining statute of limitations period ran out, i.e., September 29, 2005 is 110 days after June 11, 20005, and 110 days was the total number of days remaining of the 365 days AEDPA statute of limitations. Notwithstanding this, Petitioner waited until July 23, 2007, to file the current habeas petition, which is 662 days past the date that AEDPA's statute of limitations had already run out, i.e., past September 29, 2005. Adding these time periods together, Petitioner did not file his current habeas petition until 772 days after the Pennsylvania Supreme Court denied his PAA. Adding this delay of 772 days to the period of time Petitioner allowed to pass after his conviction became final and before he filed his PCRA petition, i.e., a total of 255 days, means that Petitioner expended a total of 1027 countable days prior to filing the instant habeas petition.

Hence, absent equitable tolling, this petition is clearly time barred. Petitioner argues that he is entitled to equitable tolling.

It is true that the doctrine of equitable tolling applies to AEDPA's statute of limitations. Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616 (3d Cir. 1998). However, the court cautioned in Miller about the limited nature of equitable tolling:

> equitable tolling is proper only when the "principles of equity would make [the] rigid application [of a limitation period] unfair." Shendock, 893 F.2d at 1462. Generally, this will occur when the petitioner has "in some extraordinary way ... been prevented from asserting his or her rights." Oshiver, 38 F.3d 1380. The petitioner must show that he or she "exercised reasonable diligence in investigating and bringing [the] claims." New Castle County, 111 F.3d at 1126. Mere excusable neglect is not sufficient. See Irwin v. Department of Veterans

7

Affairs, 498 U.S. 89, 96 (1990); New Castle County, 111 F.3d at 1126.

Id. at 618-19. Put succinctly, a habeas petitioner seeking to invoke the doctrine of equitable tolling must establish two things: (1) the existence of "extraordinary circumstances" which prevented him from filing in a timely manner and (2) that he acted with reasonable diligence. Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999)("Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."), reh'g and suggestion for reh'g en banc denied, 207 F3d 666 (11th Cir. 2000). See also Lacava v. Kyler, 398 F.3d 271, 275-76 (3d Cir. 2005)("Equitable tolling is appropriate . . . such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition *and* the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims."). In order "[t]o establish the extraordinary circumstances necessary to equitably toll the AEDPA's statute of limitations, a habeas petitioner must prove that the cause of his delay was both beyond his control and unavoidable even with diligence." Simmons v. Yukins, No. Civ. 01-CV-71287-DT, 2001 WL 739505, at *2 (E.D. Mich. May 9, 2001).

Because equitable tolling is a doctrine of equity, as its name implies, the equitable maxim of one who seeks equity must do equity, Koster v. American Lumbermens Mut. Casualty Co., 330 U.S. 518, 522 (1947), likewise applies. In the present context, this principle requires that Petitioner not have delayed pursuit of his rights. This is so because "[e]quity is not intended for those who sleep on their rights." Covey v. Arkansas River Co., 865 F.2d 660, 662 (5th Cir. 1989). Furthermore, it is Petitioner's burden to plead and prove entitlement to equitable tolling. See, e.g., Polk v. Cain, No. Civ. A. 00-3026, 2001 WL 736755, at *9 (E.D. La. June 23,

2001)("A person seeking the tolling of the statute of limitations period has the burden of showing circumstances exist that justify tolling."); Balagula v. United States, 73 F.Supp.2d 287, 291 (E.D.N.Y. 1999)("The burden lays with the petitioner to establish the entitlement to equitable tolling."); Turner v. Singletary, 46 F.Supp.2d 1238, 1243 (N.D. Fla. 1999)("The burden is upon the petitioner to show that equitable tolling is warranted.").

Hence, in addition to proving the existence of extraordinary circumstances, and as a corollary of the principle that equity does not assist those who sleep on their rights, "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)). Given that Petitioner spent a total of 1027 countable days prior to filing the instant habeas petition, and he had only 365 days in which to bring his habeas petition, he must show that he acted with reasonable diligence for a period of 662 days in order to render his petition timely because he must have the 662 days equitably tolled in order to bring himself within the 365 days allotted by AEDPA. See Lacava v. Kyler, 398 F.3d 271, 277 (3d Cir. 2005).[6]

---

[6] The Court stated in Lacava that

> It is a well-established principle that, in order for appellant to claim an entitlement to equitable tolling, he must show that he "exercised reasonable diligence in ... bringing [the] claims." Miller, 145 F.3d at 618-619 (quoting New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1126 (3d Cir.1997); see also Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990)). **This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well**. See, e.g., Jones v. Morton, 195 F.3d at 160 (equitable tolling is not warranted where appellant "made no showing that he 'exercised reasonable diligence' in satisfying the exhaustion requirement in order to present his claims in a timely federal habeas petition").

Here, it seems that Petitioner has slept on his rights and hence, the delay in filing the habeas petition was not unavoidable even with diligence. First, he fails to establish extraordinary circumstances, which is to say that Petitioner's sole excuse of allegedly not being timely informed about the disposition of his PAA simply does not amount to extraordinary circumstances. Lacava, 398 F.3d at 276.[7] Because Petitioner must establish both the existence of extraordinary circumstances and that he acted with reasonable diligence throughout the time he seeks to have equitably tolled, and he has failed to establish extraordinary circumstances, he fails to establish entitlement to equitable tolling.

Alternatively, even if Petitioner had established extraordinary circumstances, he failed to

---

Lacava v. Kyler, 398 F.3d 271, 277 (3d Cir. 2005)(emphasis added).

[7] The Lacava Court held:

> LaCava argues that his failure to receive notice of the Pennsylvania Supreme Court's denial of his petition for permission to appeal constitutes extraordinary circumstances which would warrant equitable tolling. We disagree.
> We note that LaCava was represented by counsel during his state collateral proceedings, including the filing of his petition for allowance of appeal. Accordingly, LaCava was not entitled to personal notice of the Pennsylvania Supreme Court's order. *See* Pa. R.App. P. 1123(a). LaCava fares no better by implying that counsel was derelict in failing to timely notify him of the state court's disposition. We have stated that "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." Merritt v. Blaine, 326 F.3d 157, 169 (3d Cir.2003) (quoting Fahy, 240 F.3d at 244); see also Johnson v. Hendricks, 314 F.3d 159, 163 (3d Cir. 2002). LaCava advances no allegations of attorney malfeasance that would elevate this case to an "extraordinary circumstance" sufficient to warrant equitable tolling. Moreover, the circumstances of this case are certainly distinguishable from that presented in Seitzinger, *supra*, 165 F.3d at 242, where we held that an attorney's affirmative misrepresentation to his client that he had filed a timely complaint on her behalf when in fact he had not, coupled with the plaintiff's extreme diligence in pursuing her claim, "created a situation appropriate for tolling."

Lacava, 398 F.3d at 276. What the Lacava court stated applies equally to Petitioner.

establish that he acted with due diligence throughout the period of time he would need to have equitably tolled.

The only excuse Petitioner offers for failing to file his habeas petition timely is the allegation that the Pennsylvania Supreme Court did not send him a copy of the order denying his PAA at the conclusion of the PCRA proceedings and neither did his counsel do so. Petitioner argues that he only learned in July 2007 that the Pennsylvania Supreme Court denied his PAA. Dkt. [12] at 41. He does say that after waiting some unspecified amount of time, he spoke to many people, including the law librarian at the prison, "about checking on the status of my Petition for Allowance of Appeal." Dkt. [12] at 41. He further states that everyone he spoke with told him that the Pennsylvania Supreme Court's decision could take a long time. Id. Petitioner then goes on to say that he "started to be concerned when the mailroom here [i.e., at his prison] started to have problems and moved all handling to Smithfield SCI for this prison. I wrote to the mailroom manager to see if any mail from the Pa. Supreme Court came for me. I was told no." Id., at 41 (emphasis deleted). Petitioner also indicates that he "did try to call my former lawyer but the calls were not accepted. I also wrote [to my former lawyer] inquiring of the petition in the Supreme Court but Mr. Chester, Esq. never replied." Dkt. [12] at 42. Petitioner also claims, albeit not in his affidavit, that he wrote to both Attorney Chester and the Pennsylvania Supreme Court on a regular basis for the status of his case. Dkt. [23] at 10.

Glaringly absent from Petitioner's affidavit and his traverse and all of his filings, wherein he recounts his efforts, are the dates when he undertook the actions which he seeks to use to support his contention that he acted with due diligence. Absent such dates, he utterly fails to sustain his burden to show that he acted with reasonable diligence throughout the 662 days which

11

he is required to have tolled in order to succeed in showing that with equitable tolling, his petition is timely filed. Agudelo v. United States, No. 04 CV 670 CBA, 2006 WL 3694555, at *2 (E.D.N.Y., Dec. 14, 2006)("although Agudelo's petition is based in part on his attorney's alleged failure to file a notice of appeal, Agudelo has not indicated when he discovered that his appeal had not been filed"); Tellier v. United States, No. 97 Civ. 8747, 2006 WL 2707371, at *7 (S.D.N.Y. Sept. 20, 2006) (denying claims as untimely where petitioner did not "specify the date on which he discovered the facts that support [his] claims ... [n]or explain why these facts could not have been discovered earlier through the exercise of due diligence"); See also Lacava, 398 F.3d at 279 ("LaCava has not alleged **facts** sufficient to show that sound legal principles as well as the interests of justice demand pursuit of the sparing doctrine of equitable tolling.")(all internal quotations deleted)(emphasis added). Even if Petitioner were to succeed in showing that he acted with reasonable diligence for 661 out of the 662 days of that time, he would still fall short of establishing the complete amount of equitable tolling as would be necessary to show his petition was timely.

Perhaps aware that his argument for equitable tolling is deficient, Petitioner also contends that he is entitled to equitable tolling because he is actually innocent of the crimes. Dkt. [12] at 30 ("Petitioner also argues the contention that because he is actually innocent his failure to timely file his §2254 should be excused."). Petitioner contends that he is actually innocent of the crimes and that there must be an exception to the AEDPA statute of limitations as a bar when the untimely Petitioner raises such an actual innocence claim.

This court is not persuaded that there is a constitutionally required innocence exception to AEDPA's statute of limitations. Contra Holloway v. Jones, 166 F.Supp.2d 1185, 1190

12

(E.D.Mich. 2001). The court is not sure that any provision of the United States constitution requires an actual innocence exception to AEDPA's statute of limitations given that state prisoners may not have a **constitutional** right to have federal courts issue writs of habeas corpus relieving them of custody based on state court convictions. Ex parte Bollman, 8 U.S. (4 Cranch) 75 (1807)(state prisoners have no federal habeas corpus right unless Congress creates one); Ex parte Dorr, 44 U.S. (3 How.) 103, 105 (1845)(the Court ruled that "neither this nor any other court of the United States, or judge thereof, can issue a [writ of] habeas corpus to bring up a prisoner, who is in custody under a sentence of execution of a state court, for any other purpose than to be used as a witness."). If there is no federal constitutional right of a state prisoner to a federal writ of habeas corpus, then placing a time limitation on access to such a non existent constitutional right would not seem to violate the constitution. However, even if there were such an actual innocence exception, the standards for making a showing of such actual innocence should be at least as stringent as the standards under Schlup v. Delo, 513 U.S. 298 (1995) for excusing a procedural default. See, e.g., United States v. Stubbs, 229 F.3d 1165 (Table), 2000 WL 1174656 (10th Cir. 2000) (unpublished) (applying Schlup standard to actual innocence claim so as to overlook failure to comply with AEDPA's statute of limitations); Lucidore v. New York State Div. of Parole, 209 F.3d 107, 114 (2d Cir. 2000)(same).

In order to make a showing of "actual innocence" a petitioner must

satisfy a two-part test in order to obtain review of otherwise procedurally barred claims. First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial. Schlup, 513 U.S. at 327-28. Second, the petitioner must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327.

13

Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001), cert. denied, 498 U.S. 881 (2001). It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that. In Schlup, the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by Sawyer and Carrier does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." Schlup, 513 U.S. at 329.

The first prong of the two part test, i.e., whether the proffered evidence is new, provides that "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d at 1028. Petitioner's claim of actual innocence flounders on this ground. Petitioner does not suggest that any new evidence exists, nor does he make a proffer of any new evidence of his innocence.[8]

Moreover, in light of the fact that Petitioner essentially confessed to the shooting while being interrogated by the police, Dkt. [20-2] at 28, and in light of the fact that he was identified as the shooter by an eyewitness of the shooting who knew Petitioner, id., at 27, Petitioner fails on the second prong as well. It stretches credulity to think that in light of his confession to shooting in the bar and the other overwhelming evidence of his guilt, a reasonable juror would have found him not guilty. Hence, even assuming an actual innocence exception to the AEDPA statute of limitations, Petitioner has simply failed to meet the Schlup standard in attempting to have his

---

[8] There does appear to be one narrow exception to the requirement of producing new evidence in order to successfully demonstrate a "miscarriage of justice." See, e.g., United States v. Garth, 188 F.3d 99 (3d Cir. 1999). However, for reasons explained in Sweger v. Chesney, 294 F.3d 506, 523 n.18 (3d Cir. 2002) and Gale v. Rozum, No. 06-CV-1266, 2006 WL 2092572 (M.D.Pa. July 25, 2006), the narrow Garth exception does not apply here. Whereas in Garth a subsequent interpretation of a criminal statute by the United States Supreme Court may have rendered the petitioner therein not guilty of the crime, no such factual scenario is present here.

failure to comply with AEDPA's statute of limitations overlooked.

Accordingly, the petition should be denied as time barred.

## 2. The Petition is meritless

In the alternative, Petitioner has failed to establish that the State Court's adjudication of his ineffective assistance of trial counsel claim was contrary to or an unreasonable application of Supreme Court extant precedent.

The Superior Court addressed this issue of ineffectiveness of trial counsel for failing to call two witnesses as follows:

> In order to successfully demonstrate ineffective assistance of counsel, Nelson must establish: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. Commonwealth v. Kimball, 555 Pa. 299, 312, 724 A.2d 326, 333 (1999). Furthermore, in order to prevail on a claim of ineffective assistance of counsel for the failure to call witnesses, Nelson must demonstrate: (1) that the witnesses existed; (2) the witnesses were available to testify; (3) that counsel knew of the existence of the witnesses or should have known of the witnesses' existence; (4) that the witnesses were prepared to cooperate and would have testified on defendant's behalf; and (5) that the absence of the testimony prejudiced the defendant. Commonwealth v. Halley, 839 A.2d 392, 397-398 (Pa. Super. 2003); Commonwealth v. Pond, 846 A.2d 699 (Pa. Super. 2004).
> . . . .
> In the case *sub judice*, Nelson concedes that Dirra Smith cannot be located and Shawn Matthews is now deceased, and that no affidavits exist concerning the substance of their potential testimony. Although part of Nelson's argument is that appellate counsel was ineffective in failing to secure the affidavits, we find that Nelson is unable to meet his burden of establishing that these witnesses were available to testify, and that the witnesses were prepared to cooperate and would have testified on his behalf. Hally. The record does not establish whether the witnesses' testimony would have even been beneficial to Nelson, or exculpatory in nature.[3] Under these circumstances, it is mere speculation whether the testimony of these witnesses would have assisted Nelson; therefore, Nelson is unable to establish that he was prejudiced by the absence of this testimony, and also fails to show that but for the errors and omissions of counsel, there is a

15

reasonable probability that the outcome of the proceedings would have been different.

_____

[3] The affidavit of Evelyn Youngblood, attached to the PCRA petition as Exhibit "E", merely states that trial counsel told her that Shawn Matthews was not a credible witness, and that trial counsel had attempted to secure Dirra Smith's presence for trial. Even assuming the accuracy of Youngblood's statements in the affidavit, and aside from any evidentiary restrictions concerning hearsay, these facts would merely support a finding that Nelson fails to establish trial counsel's ineffectiveness. If trial counsel believed Shawn Matthews was not a credible witness, then trial counsel had a reasonable strategic basis for not calling Shawn Matthews as a witness. Kimball. Moreover, if trial counsel had an agreement with Dirra Smith for her to testify, and she failed to appear and could not be located after a subpoena had been issued, then Nelson fails to establish that the witness was ready and willing to testify on his behalf. Halley. Therefore, Youngblood's affidavit is of no benefit to Nelson.

Dkt. [20-8] at 30-31.[9]

The legal standard of ineffectiveness announced in Commonwealth v. Kimball and cited to and utilized by the Superior Court in Petitioner's appeal is the same test as announced in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987). Hence, in disposing of these ineffective assistance claims, the State courts relied upon the test definitively announced in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987). In Pierce, the Pennsylvania Supreme Court developed an

_____

[9] The affidavit of Ms. Youngblood provided that

> I am EVELYN YOUNGBLOOD, an adult individual. . . . I was personally involved in the trial court defense of ERNEST NELSON. I personally was present during a telephone conversation where trial counsel spoke to a Maryland eyewitness to the shooting, DIRRA SMITH, who would identify a third party as the shooter, and agreed to voluntary [sic] attend and testify at the trial of ERNEST NELSON one week later. DIRRA SMITH, however, at the time of trial did not attend and could not be found by subpoena once the trial started. Additionally, SHAWN MATHEWS, another eyewitness to the shooting residing in Pittsburgh, PA who would have identified a third party as the shooter, actually attended the trial but was not called to testify. Trial counsel told me that MATHEWS was not a credible witness. Later, SHAWN MATHEWS died and MATHEWS' testimony was permanently lost.

Dkt. [20-6] at 30-31.

16

ineffective assistance standard that requires a petitioner to demonstrate that (1) the underlying claim is of arguable merit, (2) counsel had no reasonable basis for the act or omission in question, and (3) but for counsel's act or omission, it is reasonably probable that the outcome of the proceedings would have been different. Commonwealth v. Pierce, 527 A.2d at 975. See also Commonwealth v. Douglas, 645 A.2d 226, 230-31 (Pa. 1994). This standard has been found to be materially identical to the test enunciated in Strickland. See Werts, 228 F.3d at 203. The Third Circuit Court has ruled that this standard is not "contrary to" Strickland, in the first sense of contrary to,[10] i.e., applying a wrong rule of law,[11] and therefore, "the appropriate inquiry is

---

[10] In Williams v. Taylor, 529 U.S. 362 (2000), the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: (1) where the State court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or (2) where that State court decision "involved an unreasonable application of [] clearly established Federal law as determined by the Supreme Court of the United States." The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)). Moreover, it is Petitioner's burden to prove the State court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197.

[11] Of course, it would remain open to Petitioner to show that the State courts' adjudication of his claim was contrary to United States Supreme Court precedent in the second sense of "contrary to," i.e., demonstrating the existence of a Supreme Court case that was factually indistinguishable from the State court case, yet the State court decided it differently from the Supreme Court. Petitioner has not done so in this case however. The Court in Strickland denied relief, the State courts here as well denied relief on

17

whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the State court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland." Werts, 228 F.3d at 204. Because the State courts decided Petitioner's claims of ineffective assistance of counsel under the standards of Pierce and Kimball and those standards are the same as the Strickland standard, and because Petitioner has not cited any extant United States Supreme Court precedent that is factually similar to this case but that was decided differently than the State courts decided Petitioner's case, this court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which demands that a habeas petitioner demonstrate that the State court's adjudication of the federal claim was an unreasonable application of then extant United States Supreme Court precedent.

Petitioner has failed to carry his burden to do so. Because Petitioner fails to establish, as is his burden, that the Superior Court's adjudication of his ineffective assistance of trial counsel claim was an unreasonable application of then extant Supreme Court precedent, the petition should be denied.

Accordingly, the petition should be denied either as being untimely or because it is meritless.

**Certificate of Appealability**

A certificate of appealability (COA) should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). There is a difficulty with this provision when the District Court does not decide the case on the merits but

---

the issue of ineffectiveness which Petitioner raises in the habeas petition.

18

decides the case on a procedural ground without determining whether there has been a denial of a constitutional right. See, e.g., Slack v. McDaniel, 529 U.S. 473 (2000); Walker v. Government of The Virgin Islands, 230 F.3d 82, 89-90 (3d Cir. 2000). In Slack v. McDaniel, the Supreme Court held that "when the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. at 478. Hence, the analysis as to whether a certificate of appealability should issue to review a procedural question has "two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding." Id. at 484-85. The test is conjunctive and both prongs must be met. See Walker v. Government of the Virgin Islands, 230 F.3d at 90.

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether this Court was correct in dismissing petition for being untimely under AEDPA and/or in determining that Petitioner failed to establish that the State Court's adjudication was contrary to or an unreasonable application of Supreme Court precedent. Accordingly, a certificate of appealability should be denied.

CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 13 January, 2009

cc: The Honorable Terence F. McVerry
United States District Judge

Ernest Jamal Nelson
EL-2353
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16554-1112

All counsel of record by Notice of Electronic Filing